UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-21544-HOEVELER

ARCH CREEK YACHT SALES, LLC
a Florida limited liability company,

    Plaintiff,

v.

GREAT AMERICAN INSURANCE
COMPANY OF NEW YORK,
a New York corporation,

    Defendant.

_____

## ORDER AND REASONS

BEFORE the Court are cross-motions for summary judgment. The plaintiff, Arch Creek Yacht Sales, LLC moves for summary judgment on its breach of contract claim against its insurer, Great American Insurance Company, contending that Great American wrongly denied insurance coverage for the theft of one of Arch Creek's yachts. Great American argues that there is no coverage because the yacht was stolen by one of Arch Creek's off-duty salesmen, and, therefore, coverage is precluded by a policy exemption for losses caused by dishonest employees.

Two questions are raised by the cross-motions: (1) was the Arch Creek salesman an "employee" for the purposes of the insurance policy exclusion when he returned to his workplace after hours and committed a theft? and, (2) was the theft of the vessel the

proximate cause of its loss, or was the loss caused by the failure of marine salvage companies to rescue the stolen boat once it was discovered grounded on the rocks several hours before it sank. The Court has been duly briefed and heard oral arguments in Chambers on April 16, 2009.  For the reasons that follow, Arch Creek's motion for summary judgment is DENIED, Great American's motion for summary judgment on the applicability of the insurance policy exclusion is GRANTED, and the question of proximate causation of the loss can be resolved at trial.

## Background

Arch Creek sells new and used boats out of its dealership at the TNT Marina in North Miami. Arch Creek employed Scott Leonardo as a boat salesmen in 2004 and 2005, and then again from December 2007 until April 23, 2008. On the afternoon of April 23, 2008, Leonardo participated in a sea trial of a 2008-model 40' Monterey motor vessel along with a mechanic and a prospective purchaser, who had agreed to accept delivery of the vessel the next day. After the sea trial, Leonardo docked the boat in its slip and returned the engine key to the Arch Creek business office.

At around 10 p.m. that night, Leonardo, accompanied by several friends, returned to the marina after it was closed. He gained access to the Arch Creek business office with his key, found the Monterey's engine key, and drove the vessel towards sea. The ride ended abruptly, however, when Leonardo grounded the Monterey on the

rocks of Government Cut as he was trying to leave the Port of Miami. A local marine towing company, Sea Tow Miami, responded to the scene and rescued the passengers from the stranded vessel. The Coast Guard promptly notified Stephen Hopkins, the owner of Arch Creek, about the situation and Hopkins, in turn, contacted Sea Tow Miami and another salvage company, Action Marine Towing, Inc., to discuss salvage options. Ultimately, Mr. Hopkins reached a preliminary salvage agreement with the owner of Action Towing and the two men traveled to Government Cut in Action Towing's boat. By the time they arrived, competing salvors from Sea Tow Miami and Biscayne Towing were already there and demanded a cut of the $50,000 salvage job. As the tide came in and approached the vessel, the salvors allegedly continued arguing about money and did nothing to secure the vessel or remove it from the jetty. The wind and tide eventually knocked the boat off the rocks and it sank.

Arch Creek filed a claim for insurance coverage, which Great American allegedly "refused to pay" in breach of the policy.[1] Complaint, ¶ 24. In denying payment, Great American relied on an exemption in the insurance policy for losses caused by the dishonest acts of Arch Creek employees. According to Arch Creek's

---

[1] Great American points out that it never denied coverage before Arch Creek filed this lawsuit. Rather, it issued a letter stating that it was "investigating this claim under a reservation of rights to decline coverage." At oral argument, Great American conceded that its defense of this lawsuit is equivalent to a denial of Arch Creek's claim.

motion for summary judgment, however, the employee dishonesty exemption does not apply because Scott Leonardo cannot be considered an "employee" after his shift was over and the business was closed. In the alternative, Arch Creek asserts that, in any case, the proximate cause of the loss was not the theft, but the salvor's negligent delay in implementing the salvage operation.

I.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The burden of establishing the absence of a genuine issue of material fact lies with the moving party. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The Court should not grant summary judgment unless it is clear that a trial is unnecessary, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986), and any doubts in this regard should be resolved against the moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). This standard is not affected by the filing of cross motions for summary judgment, and the Court must determine for each side whether a judgment may be entered in accordance with Rule 56.

II.

The material facts surrounding Scott Leonardo's employment are

4

not disputed. He worked for Arch Creek full time on a salary plus commission basis; he had a key to the Arch Creek business office but wasn't authorized to use it outside normal weekday hours of 9 a.m. to 6 p.m. Nor is there any dispute that Leonardo entered the marina after hours on the night of Wednesday, April 23, 2008 and stole the boat. Further, Great American concedes that if the Court finds that Leonardo was not an "employee" within the meaning of the policy exclusion when he took the boat, then Arch Creek is entitled to insurance coverage for its loss. The relevant exclusion provides:

> This Coverage Form does not insure against loss, damage or expense cause by or resulting from. . . [m]isappropriation, secretion, conversion, infidelity, or any dishonest act on the part of the insured or other party of interest or his or their employees or others to whom the property may be entrusted (Carriers for Hire excepted).

Arch Creek contends that the term "employees" refers to *on-duty* employees working in the service of the employer during normal business hours. It is at least ambiguous, Arch Creek submits, whether the term "employees" encompasses an off-duty employee who commits a theft. According to Arch Creek, if an insurer wishes to exclude coverage for losses caused by off-duty employees, the exclusion must state "whether or not such dishonest acts are committed during normal business hours," or "while working or otherwise." Great American responds that the exclusion is unambiguous as written and no additional language is needed,

5

because an employee is an employee is an employee, regardless of business hours or whether he was being compensated at the very moment of the theft.

The parties agree that New York law governs this dispute. Under New York law, the starting point in interpreting an insurance policy is to determine whether the policy terms are ambiguous. "[U]nambiguous terms are to be given their 'plain and ordinary' meaning." State of New York v. Blank, 27 F.3d 783, 792 (2d Cir. 1994); Ace Wire & Cable Co., Inc. v. Aetna Casualty & Sur. Co., 60 N.Y.2d 390, 398, 457 N.E.2d 761, 764 (1983) ("The tests to be applied in construing an insurance policy are common speech and the reasonable expectation and purpose of the ordinary businessman") (internal citation omitted). "As with contracts generally, a provision in an insurance policy is ambiguous when it is reasonably susceptible to more than one reading." Haber v. St. Paul Guardian Ins. Co., 137 F.3d 691, 695 (2d Cir. 1998) (internal citations omitted). If there is an ambiguous term, the ambiguity is to be resolved against the insurer, particularly if the term is found in an exclusionary clause. See Ace Wire & Cable Co., 60 N.Y.2d at 398.

There are very few insurance cases addressing the status of an employee after his shift has ended, and apparently none from New York. Arch Creek's case primarily rests on a Michigan Supreme Court decision from 1958, Century Indemnity Company v. Schmick, 351 Mich. 622, 88 N.W.2d 622 (1958), which held that the insurance company

could not rely on a similarly worded policy exclusion to deny coverage for an after-hours burglary by one of the insured's employees. After noting that Michigan courts "invariably construe[] such clauses strictly against the insurer," the Schmick court concluded that, "[e]mployee can fairly be construed as meaning one who is active in the work for which he was employed and for which he was paid to do." The employee's "breaking and entering the premises of his employer," the court wrote, "certainly could not be considered to be acting in the work he was employed and paid to do." Id. at 625. Thus, the burglar was not an employee at the time of the burglary and the insured was entitled to coverage. Id.

The New Jersey Supreme Court was presented with a similar question in Del Vecchio v. Old Reliable Fire Insurance Co., 132 N.J.Super 589, 334 A.2d 394 (N.J. Super Ct. 1975) regarding "employee status on a nonworking day." The case involved a claim for insurance coverage by a warehouse company burglarized by one of its truck drivers, whose "Monday-to-Friday employee status did not give him the right to enter the warehouse at other times, nor did it provide him with a set of keys or permission to enter at will." Del Vecchio at 591. Relying on the Michigan Supreme Court's analysis in Schmick, the court concluded that the off-duty employee, "in breaking and entering the premises of his employer, certainly could not be considered to be acting in the work he was employed and paid to do." Id. at 594. Therefore, the policy

7

exclusion did not apply.

Other cases have taken the contrary position, finding that for the purposes of an employee dishonesty exclusion, the term "employee" unambiguously encompassed an off-duty employee, even in the absence of the "while working or otherwise"-type language. See Transportation Insurance Co., v. Didaniele, 1990 WL 149222 (E.D. Pa. 1990) (refusing to "strain the plain meaning of the language to find that 'employee' does not contemplate an 'off-duty' employee" who broke into employer's business after hours and started a fire); C & H Plumbing and Heating, Inc., v. Employers Mutual Casualty Company, 264 Md. 510, 517, 287 A.2d 238, 241 (1972) ("the word 'employee' in the context in which it is used would be understood by the average, ordinary individual as including the persons responsible for the thievery here. He would regard them as employees after quitting time as well as during their working day."); see also R.I. Recreation Center v. Aetna Casualty & Surety Co., 177 F.2d 603 (1st Cir. 1949) (losses caused by employee who robbed employer's safe at 2 a.m. when the business was closed were excluded from coverage by employee dishonesty exclusion). The difference in the two lines of cases appears to that, in concluding that employment ends with each day's shift, the Schmick and Del Vecchio courts found it significant that the putative employees were not "acting in the work [they] were employed to do" when they committed their crimes. See, e.g., Del Vecchio at 594. This Court

8

does not find that observation particularly useful. The exclusion
would be pointless and there would always be coverage. In reality,
the clear intent of the exclusion is to prevent recovery for losses
caused by "employees" because they tend to be the individuals who
"have more familiarly with the surroundings and, therefore, be
better able to steal from [their employer] because of that
familiarity than a [non-employee]." C & H Plumbing and Heating,
Inc., 264 Md. at 517. Indeed, Scott Leonardo's familiarity with
Arch Creek's operations played a large part in the theft. Stephen
Hopkins testified that, on the night of the theft, Leonardo either
possessed a key to the marina gate or was given entrance by the by
security guard on duty, who would have recognized Leonardo as one
of Arch Creek's salesmen. Leonardo had test-driven the boat earlier
that day, so he knew where it was parked and that its engines were
reliable and sea-worthy, fully equipped to be picked up by the
purchaser the next day. And Leonardo knew where to locate the
engine key from the business office, to which he had access. The
illegal plan was the kind of quintessential "inside job" by an
employee that the insurance policy was meant to exclude.

Considering the "common speech and the reasonable expectation
and purpose of the ordinary businessman" see Ace Wire & Cable Co.,
Inc., 60 N.Y.2d at 398, the Court finds it would be unreasonable to
consider Scott Leonardo as anything other than an employee of Arch
Creek. Leonardo's unambiguous employee status lies in sharp

contrast to the worker in <u>Citizens Insurance Company of New Jersey</u> <u>v. Kansas City Commercial Cartage</u>, Inc., 611 S.W.2d 302 (Mo. Ct. App. 1981), a case in which the Missouri Court of Appeals concluded it was at least ambiguous whether the term "employee" encompassed a day laborer who stole a truckload of goods from his employer, Kansas City Commercial Cartage company. The laborer was hired on a daily basis and terminated with pay at the end of each workday. The laborer worked only five days the month of the theft (March of 1968), and before that, his most recent work was for 10 days during September of 1967. "Under such circumstances," the court wrote, "it becomes quite evident that the term employee is a highly ambiguous term." <u>Id</u>. at 310. Therefore, it was reasonable for Cartage to expect coverage for losses caused by "one who very well could not have been employed by Cartage in the several months preceding the loss and by one who might never have been hired by Cartage in the future." <u>Id</u>. at 311. There is no such ambiguity with respect to the employee status of Scott Leonardo, who had been working for Arch Creek as a full-time, salaried employee for months before he committed the theft. He had a key to the business office and the authority to access the rack upon which the boats' engine keys were stored. The word "employee," in the context in which it is used in the exclusion, would be understood by the average, ordinary individual as including Scott Leonardo. To the extent that Arch Creek's losses were proximately caused by Leonardo's theft of

the boat, coverage for those losses is barred by the employee dishonesty exclusion in the insurance policy.

III.

Arch Creek contends that coverage for the theft was suspended only while Leonardo was in possession of the yacht, and coverage resumed once Arch Creek regained constructive possession of the abandoned yacht at Government Cut. Stephen Hopkins testified that the boat was not damaged by the grounding, "[n]ot even scratched bottom paint." On the other hand, Great American has presented affidavits from witnesses who claim the boat sustained significant damage from the grounding. This conflicting evidence raises material fact disputes about coverage and proximate causation issues that cannot be resolved under Rule 56. Whether the boat was damaged as a result of the theft or, as Arch Creek claims, by a covered risk, is a question for trial.

Accordingly, it is hereby

**ORDERED AND ADJUDGED:**

1.   Arch Creek's motion for summary judgment is DENIED;

2.   Great American's motion for summary judgment on the applicability of the insurance policy exclusion is GRANTED.

**DONE AND ORDERED** in chambers, Miami, Florida, April 24, 2009.

WM M Hoeveler
_____
WILLIAM M. HOEVELER
SENIOR UNITED STATES DISTRICT JUDGE

Copies Furnished:   Counsel of Record